Mark E. Ellis – 127159
Jennifer S. Gregory – 228593
ELLIS, COLEMAN, POIRIER, LAVOIE,
  & STEINHEIMER LLP
555 University Avenue, Suite 200 East
Sacramento, CA  95825
Tel: (916) 283-8820
Fax: (916) 283-8821

Attorneys for Defendants ELITE RECOVERY SERVICES, INC., PRESIDIO FINANCIAL, LLC
AND PAUL NIEDZIALOIOSKI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY CASTILLO, | Case No.:  CV-08-2322 |
| PLAINTIFF, | **DECLARATION OF MARK E. ELLIS IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS [FRCP 12(b)(6)]** |
| v. | |
| ELITE RECOVERY SERVICES, LLC, | DATE:      July 24, 2008 |
| DEFENDANTS. | TIME:      10:00 a.m. |
| | JUDGE:    Hon. Maria-Elena James |

I, Mark E. Ellis, declare that:

1.     I am an attorney duly licensed to practice in all courts of the State of California, as well as all the federal courts in California and the Ninth Circuit Court of Appeals.  I am the Managing Partner of the law firm of Ellis, Coleman, Poirier, LaVoie & Steinheimer, LLP ("Ellis, Coleman"), and counsel for Defendants Elite Recovery Services, Inc., Presidio Financial, LLC, and Paul Niedzialowski.  I have reviewed the litigation file and pleadings, as well as the court docket for this case, and I possess personal knowledge of the information set forth herein below, unless noted as based on information and belief, all of which is true and correct of my own personal knowledge, and if called upon to testify, I could and would competently testify thereto.

2.     Attached hereto as **Exhibit 1** is a true and correct copy of the State Bar Court of California, Hearing Department – Los Angeles Decision Denying Involuntary Inactive Enrollment, in

DECLARATION OF MARK E. ELLIS IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS [FRCP 12(b)(6)]

the matter of *In the Matter of Jack H. Boyajian, et al.*, Case No. 06-TE-15159-RAH, 07-TE-13054

Case No. 06-TE-15159-RAH, 07-TE-13054 (State Bar Court Of California, October 2, 2007).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed on this 17th day of June 2008, in Sacramento, California.

/s/ Mark E. Ellis
Mark E. Ellis

DECLARATION OF MARK E. ELLIS IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS [FRCP 12(b)(6)]

# PUBLIC MATTER

FILED

OCT 02 2007

STATE BAR COURT
CLERK'S OFFICE
LOS ANGELES

## STATE BAR COURT OF CALIFORNIA

## HEARING DEPARTMENT - LOS ANGELES

|  |  |
|---|---|
| In the Matter of | Case No. 06-TE-15159-RAH |
| JACK H. BOYAJIAN,<br>Member No. 202304, | 07-TE-13054 |
| A Member of the State Bar, | |
| and | |
| BOYAJIAN LAW OFFICES, P.C.,<br>BOYAJIAN AND BRANDON LEGAL<br>GROUP, P.C., JBC LEGAL GROUP,<br>P.C. AND JBC & ASSOCIATES, P.C., | DECISION DENYING INVOLUNTARY<br>INACTIVE ENROLLMENT (BUS. &<br>PROF. CODE § 6007, subdivision (c)(1)) |
| California Professional Corporations<br>Registered with the State Bar of California | |

## I. INTRODUCTION

This matter is before the court on the verified application of the Office of the Chief Trial Counsel of the State Bar of California (State Bar) seeking to involuntarily enroll respondent Jack H. Boyajian (respondent) as an inactive member of the State Bar pursuant to Business and Professions Code section[1] 6007, subdivision (c)(1) and rule 461 of the Rules of Procedure of the State Bar of California (Rules of Procedure).[2]

---

[1]Future references to section(s) are to this source.

[2]In its application filed on March 8, 2007, the State Bar also sought the inactive enrollment of the following California professional law corporations of which respondent is the controlling officer, director and shareholder: JBC & Associates, P.C., JBC Legal Group, P.C., Boyajian & Brandon Legal Group, P.C., and Boyajian Law Offices, P.C. In addition, the State Bar also requested that the court issue a cease and desist order precluding the above professional law corporations from being held out as "lawfirms," being used to practice law, and precluding the corporations from being used in efforts to collect debts from consumers pursuant to section 6167



EXHIBIT

Kimberly G. Anderson appeared for the State Bar. Respondent was represented by Mark E. Ellis, June D. Coleman, Andrew Steinheimer, and Jennifer A. Weiner of Ellis, Coleman, Poirier, La Voie & Steinheimer, LLP.

For the reasons stated below, the court finds that the State Bar has not proven by clear and convincing evidence the requirements to enroll respondent involuntarily as an inactive member of the State Bar pursuant to section 6007, subdivision (c)(1).

## II. SIGNIFICANT PROCEDURAL HISTORY

In State Bar Court case no. 06-TE-15159 (06 TE), the application for inactive enrollment was filed on March 8, 2007.[3] A hearing on the application was set for April 3, 2007.

In State Bar Court case no. 07-TE-13054 (07 TE), the application for inactive enrollment was filed on August 9, 2007. The response to the application was filed on August 30, 2007.

Because the 07 TE is partly based on the events covered in the 06 TE , the two matters are being considered together for purposes of decision. They were submitted on September 17, 2007, after hearings.

On August 9, 2007, the State Bar requested that the court take judicial notice of certain documents involving the civil contempt order in the Goins matter and the judgment in Montana. Good cause appearing therefor, the request is granted.

On September 17, 2007, respondent filed a request for judicial notice in support of his final brief opposing the State Bar's application. Good cause appearing therefor, the request is

---

of the Business and Professions Code pending the outcome of the disciplinary proceeding the State Bar may hereafter file against respondent and the professional law corporations. However, on May 11, 2007, the State Bar requested the dismissal of the law corporations without prejudice from this proceeding. The court granted the State Bar's request on May 11, 2007, and the above named professional law corporations have been dismissed without prejudice from this proceeding.

[3]In support of its application, the State Bar filed a request for judicial notice concurrently with the application. The court rules on the State Bar's request and took judicial notice of many, but not all, of the requested documents. However, the State Bar's request that the court take judicial notice of "all other court document [sic] in its files as may be found relevant to these proceedings" is denied, as such request is vague. Nevertheless, the court will take judicial notice of the official court file in this proceeding.

granted.

### III. JURISDICTION

Respondent was admitted to the practice of law in California on July 21, 1999, and has been a member of the State Bar at all times since.

### IV. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Section 6007, subdivision (c) authorizes the court to order an attorney's involuntary inactive enrollment upon a finding that the attorney's conduct poses a substantial threat of harm to the interests of the attorney's clients or to the public. In order to find that an attorney's conduct poses a threat of harm, the following three factors must be shown: (1) the attorney has caused or is causing substantial harm to his clients or the public; (2) the injury to the attorney's clients or the public in denying the application will be greater than any injury that would be suffered by the attorney if the application is granted or, alternatively, there is a reasonable likelihood that the harm will continue; and (3) there is a reasonable probability that the State Bar will prevail on the merits of the underlying disciplinary matter. (*Conway v. State Bar* (1989) 47 Cal.3d 1107, 1126; *In the Matter of Mesce* (Review Dept. 1993) 2 Cal. State Bar Ct. Rptr. 658, 661.)

The application is based on matters not yet the subject of disciplinary charges pending in the State Bar Court. (Rules Proc. of State Bar, rules 461(a)(3) & 482(b).)

### 1. Background

Respondent is a debt collector within the meaning of the federal Fair Debt Collections Practices Act (FDCPA), 15 U.S.C., section 1692 et seq., who was attempting to collect consumer debts within the meaning of that statute.

Respondent is licensed as an attorney only in California. He uses his California law license and his California professional law corporations to aid him in his debt collection activities throughout the United States.

Some states require debt collectors to be licensed in order to collect debts within the state, while other states do not. Some of the states that require debt collectors to have a license provide an exemption for attorneys who engage in debt collection and some exempt only in-state

comply with California Civil Code section 1788.13[6], in that, by sending out letters on his letterhead, he misrepresented that the letter was from an attorney, when in fact, there was no "meaningful attorney involvement."

i. That respondent attempted to collect improper service charges not authorized by the underlying debt agreement, the FDCPA or the CA FDCPA.

j. That respondent disobeyed an injunction, in violation of section 6103.

k. That respondent failed to sign certain dunning letters, constituting acts of moral turpitude in violation of section 6106.

l. That respondent sent out letters without identifying the licensed attorney nor the non-attorney sending the letters, and failed to properly supervise account representatives, resulting in a violation of section 6077.5.

m. That respondent sent letters out with an unsigned signature block or signed using a facsimile signature referring to the law firm only, giving the false impression that there is "meaningful attorney involvement," all in violation of the FDCPA, and resulting in a violation of sections 6068, subdivision (a) and 6106.

n. That respondent sent out mass-mailed letters without listing any specific attorney and without "meaningful attorney involvement," resulting in the unauthorized practice of law, in violation of sections 6125, 6126, and 6068, subdivision (a).

o. That respondent violated the FDCPA by sending out letters to a person other than the debtor, resulting in a violation of section 6068, subdivision (a).

**4. Additional alleged misconduct in all other states and as alleged in 07-TE-13054**

In addition to the misconduct alleged to have occurred in California, the State Bar also alleges similar misconduct arising in other states. Specifically, the State Bar contends that respondent committed misconduct in Connecticut, Minnesota, New York, Colorado, Illinois, Pennsylvania, Missouri, Tennessee, Washington, Kansas, Kentucky, Arizona, Maryland, Ohio,

---

[6]This section is part of California's version of the Fair Debt Collection Practices Act, located at Civil Code sections 1788, et seq. (hereafter referred to as the CA FDCPA).

Wyoming, New Jersey, Massachusetts, West Virginia, and Michigan. These out-of-state matters are grouped together in this decision because they share similar allegations of misconduct. The alleged misconduct is summarized as follows:

a. That respondent disobeyed court orders by failing to pay judgments, in violation of section 6103.

b. That respondent failed to timely report to the relevant state regulatory body a judgment for fraud, misrepresentation, breach of fiduciary duty, or gross negligence committed in a professional capacity, in violation of section 6068, subdivision (o)(2).

c. That respondent violated the FDCPA and California law by wilfully contacting a represented party, in violation of section 6068, subdivision (a) and rule 2-100(A).

d. That respondent violated the FDCPA by sending a letter to a debtor which falsely represented the amount of a debt, thereby committing an act of moral turpitude in violation of section 6106.

e. That respondent violated state statutes by not properly registering as a debt collector, thereby violating section 6068, subdivision (a).

f. That respondent violated state laws by holding himself out as entitled to practice in such states, in violation of section 6068, subdivision (a).

g. That respondent violated state law and the FDCPA by falsely representing that he was entitled to practice law in the recipient's state, in violation of section 6106.

h. That respondent failed to uphold the laws by attempting to collect on time-barred debts, in violation of section 6068, subdivision (a).

i. That respondent failed to supervise the activities of the lawfirms, in violation of rule 3-110(A).

j. That respondent sought to not comply with orders of state agencies to cease and desist from certain conduct, by substituting one law firm entity for another, resulting in acts of moral turpitude, in violation of section 6106.

k. That respondent violated state laws by sending computer-generated letters to residents of states in which he was not authorized to practice and in which he had no office, in violation of

section 6106 and 6068, subdivision (a).

l. That respondent lied under oath, in violation of section 6106.

m. That respondent sought to charge unauthorized service charges not permitted by state law and the FDCPA, in violation of section 6106.

n. That respondent violated state debt collection by not complying with the FDCPA, thereby violating section 6068, subdivision (a).

o. That respondent violated the FDCPA by sending further letters after notice that the recipient disputed the debt, in violation of section 6068, subdivision (a).

p. That respondent violated the FDCPA by falsely representing that a consumer committed any crime or other conduct in order to disgrace the consumer, in violation of section 6068, subdivision (a).

q. That respondent violated state law by using a recorded message utilizing an automatic dialing device, thereby violating section 6068, subdivision (a).

r. That respondent failed to give a refund to a consumer after proof of an error, in violation of section 6106.

s. That respondent made threats, in violation of the FDCPA, to a consumer, in violation of section 6106.

t. That respondent violated the FDCPA by failing to give proper notice to debtors of the nature of the debt, in violation of section 6068, subdivision (a).

u. That respondent misrepresented the amount of a returned check, resulting in a consumer paying more than the amount owed, in violation of the FDCPA and section 6106.

v. That respondent violated the FDCPA by allowing his agents to harass consumers, resulting in a violation of section 6068, subdivision (a).

w. That respondent misled attorneys during a deposition regarding the location of an company owned by respondent, in violation of section 6106.

x. That respondent violated the FDCPA by writing letters falsely representing that the letter was from an attorney, thereby violating sections 6068, subdivision (a) and 6106.

y. That respondent improperly sought to recover a debt that had been discharged in

bankruptcy, in violation of section 6068, subdivision (a).

z. That respondent induced consumers to give a credit card and promised, but later failed, to provide a receipt, in violation of section 6106.

aa. That respondent violated state unfair or deceptive trade practice laws, thereby violating section 6068, subdivision (a).

bb. That respondent caused a dunning letter to be mailed either without signature or signed by an attorney that was no longer affiliated with respondent or any of his lawfirms, in violation of section 6106.

cc. That respondent violated the FDCPA by sending out letters to a person other than the debtor, resulting in a violation of section 6068, subdivision (a).

dd. That respondent violated failed to pay a judgment for federal payroll taxes on a business he owned, in violation of sections 6068, subdivision (a) and 6106.

ee. That respondent failed to respond to a letter of a State Bar employee on or before July 30, 2007 and had not so responded as of the filing of 07-TE-13054 on August 9, 2007, in violation of section 6068, subdivision (i).

ff. That, through the use of mass mailings to thousands of consumers, respondent misrepresented that the letters on his letterhead were really from an attorney, when in fact, there was no "meaningful attorney involvement" as this term is defined in case law. This misrepresentation, it is alleged, constituted a violation of state law. As a result of this conduct, respondent is accused of violating section 6068, subdivision (a) and committing acts of moral turpitude in violation of section 6106.

## 5. Discussion

Some of the above charges will be discussed below by topic.

### A. "Meaningful attorney involvement"

The State Bar has alleged that respondent committed various acts of misconduct as a result of his failure to sufficiently participate as an attorney in the collection process. The various allegations may be grouped as all contending that respondent's activities lacked "meaningful attorney involvement," as that term has been defined by various judicial decisions.

Included in the claims of misconduct where "meaningful attorney involvement" was alleged to be lacking were the following:

1.  Through the use of mass mailings to thousands of consumers, respondent misrepresented that the letters sent with his letterhead were really from an attorney, when, in fact, there was no "meaningful attorney involvement."

2.  Through mass mailings purporting to be from a law firm or from an attorney, where there was no "meaningful attorney involvement," respondent violated the FDCPA.

3.  Through mass mailings purporting to be from a law firm or from an attorney, where there was no "meaningful attorney involvement," respondent violated California law.

4.  By sending out letters with an unsigned signature block or signed using facsimile signature referring to the law firm only, respondent gave the false impression that there was "meaningful attorney involvement" in violation of the FDCPA.

5.  By sending out mass mailed letters without listing any specific attorney and without "meaningful attorney involvement," respondent violated the FDCPA and state law.

It is argued by the State Bar, that the failure of respondent to more actively participate in the above activities (primarily the mass mailing of letters) by, for example, reviewing or signing each letter, compels the conclusion that he has failed to devote that amount of time that would be expected of an attorney carrying out his or her ethical obligations.

The concept of "meaningful attorney involvement" is one created by case law, not by the FDCPA.[7]  The term has appeared in a few federal cases, both at the trial level and on appeal. Typically, the issue arises when a letter is sent by a law firm to a consumer in a mass mailing, where it is alleged that the attorney did not directly control or supervise the process through which the letter was sent. (*Miller v. Wolpoff & Abramson, L.L.P., etc.* (2d Cir., 2003) 321 F.3d 292.) Usually, the court is interpreting 15 U.S.C. section 1692e, involving false or misleading representations made by debt collectors.  That section reads, in its entirety, as follows:

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

---

[7]In fact, a reading of the FDCPA indicates no mention of the term, "meaningful attorney involvement."

(1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.

(2) The false representation of --

    (A) the character, amount, or legal status of any debt; or

    (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

**(3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.**

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(6) The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to --

    (A) lose any claim or defense to payment of the debt; or

    (B) become subject to any practice prohibited by this title.

(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

(9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

(12) The false representation or implication that accounts have been turned over to innocent purchasers for value.

(13) The false representation or implication that documents are legal process.

(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

(15) The false representation or implication that documents are not legal process forms or do not require action by the consumer.

(16) The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 603(f) of this Act.

(Emphasis added.)

The highlighted section, above, involves false, deceptive, or misleading representations that the sender of the letter is an attorney or that the communication is from attorney. In most of the cases that discuss this matter, as is the case here, there is no real dispute that the debt collector is an attorney, at least in the literal sense. Rather, the issue arises as to whether the mass-mailed correspondence involved is *from* an attorney. That is, where minimal overview occurs by the attorney listed on the letterhead, some courts have questioned whether the letter is really *from* an attorney at all. In particular, this position has been taken by a District Court in Connecticut (*Goins v. Brandon* (2005) 367 F. Supp.2d 240); the Court of Appeals for the Second Circuit (*Cloman v. Jackson* (2d Cir., 1993) 988 F.2d 1314); a District Court for the Eastern District of California (*Newman v. Checkrite California, Inc.* (1995) 912 F.Supp. 1354); among others.

Other courts specifically note that no distinction should be drawn between lawyer and non-lawyer debt collectors, and, therefore, there is no separate "meaningful attorney involvement" standard. This rule appears to have been adopted by the Court of Appeals for the Seventh Circuit (*Jenkins v. Heintz* (7th Cir., 1997) 124 F.3d 824). Although not precisely on the issue presented here, the U.S. Supreme Court has also found that the FDCPA does apply to lawyers acting as debt collectors. (*Heintz v. Jenkins* (1995) 514 U.S. 291.) The ruling of this court, while not determinative of the issue, is at least consistent with the position that the 7th Circuit Court of Appeal took in *Jenkins v. Heintz*: that there are not separate rules for lawyer and non-lawyer debt collectors.

As noted above, other than a district court decision from the Eastern District of

California, there has been no clear resolution in California as to the applicability of the
"meaningful attorney involvement" standard in this state.  There has, however, been persuasive
discussion on the topic by ethics experts.  In Los Angeles County Formal Opinion #338
(September 27, 1973), the committee addressed a question involving an attorney on the legal
staff of a corporation who is engaged in debt collection for his employer.[8]  The matters referred
to collection at the corporation were handled in a manner very similar to the way in which
respondent handled his cases.  Non-attorneys (credit representatives, secretaries, and a paralegal)
prepared the matter for review.  If specified criteria (which were previously established by an
attorney) were met, the account was accepted by the "attorney section," and the computer sent a
series of previously-approved attorney collection letters to the delinquent account on stationery
which identifies the attorney as general attorney for the corporation's credit card center.  The
letters are all signed by a signature-duplicating machine after review by attorney section
personnel.

     The L.A. County Bar ethics committee concluded that an attorney may delegate duties to
non-attorneys, provided he or she supervises and is professionally responsible to the client for the
work done, and further, so long as lay persons do not do things that the lawyer may not do, and
do not do things that only lawyers may do.  The committee stated the following:

> "The Committee is of the opinion that the procedure outlined in the present
> inquiry does not constitute an unethical delegation of the attorney's professional
> responsibilities.  It is the attorney who has determined that if certain specific and
> objective criteria are met, a form collection letter previously approved by the attorney will
> be mailed to the customer over the signature of the attorney.  The use of a computer,
> programmed to print letters upon recognizing such specific and objective criteria, in place
> of human decisions and manually generated letters, under these facts, is immaterial."

The committee went on to find that it did not amount to an "improper deception" to allow an
attorney's name to be used on the computer generated collection letters.

     Given the above, it does not appear that California has clearly embraced the "meaningful
attorney involvement" standard.  Further, there is persuasive reasoning, as represented by the

---

[8]The full opinion is attached to the respondent's request for judicial notice filed May 23, 2007
as item number 4.

ethics opinion cited above, that compels a finding that, in fact, no such standard exists in California.  Further, since the U.S. Supreme Court has not ruled specifically on this issue, there appears to be no clear rule binding all states as to the meaning, or even the existence, of a "meaningful attorney involvement" standard.  Given the paucity of law on this subject, this court is not inclined to find that the State Bar has sustained its burden.

Even if, however, one were to find that California did, indeed, embrace the "meaningful attorney involvement" standard, the State Bar still cannot prevail.  By its own admission, respondent has met any "meaningful attorney involvement" standard imposed by judicial decisions from within or outside of this jurisdiction.  It its verified application, the State Bar has stated the following:

> "Boyajian's collection efforts primarily begin by sending a consumer a collection letter, commonly referred to as a 'dunning letter.'  Boyajian is directly involved and responsible for the content of the JBC entities' exemplar collection letters, including the substantive provisions used in each state.  He conducts an initial review of which accounts to accept from the client prior to being entered into JBC's system, and he decides which form-collection letter to send to a group of consumers.
> ...
> "Boyajian determines which initial communication will be sent to consumers.  [footnote omitted]  Boyajian has testified in deposition that he more than likely reviews the initial presentation of the debt portfolio from each JBC client, and that the vast majority of accounts are in electronic form.  [footnote omitted]  Boyajian's review involves running a sort routine and/or several account queries to determine whether an account should be accepted by one of the JBC entities and to determine what initial letter series should be sent.  [footnote omitted]   Boyajian reviews thousands of accounts in a short time.  [footnote omitted.]
>
> "JBC entities processes [sic] a batch of collection accounts through its collection software once Boyajian approves them.  [footnote omitted.]  The software converts the information from a "requested" status to an "actual letter" status.  [footnote omitted.]  The software then uses a set of parameters that merges the specific consumer information with the template letters.  The letters are then sent electronically as a print image to an outside mailer in Michigan where a hard copy of the letter is printed and mailed.  [footnote omitted.]   Boyajian provides input in determining the collection software's programing parameters.  [footnote omitted.]"

The above description of respondent's system of processing accounts, set forth by the State Bar in its verified application, appears to reflect active and meaningful attorney involvement in the collection process.  At the hearing and in the papers in this matter, there was insufficient evidence as to the standard of care for attorney involvement in the debt collection industry.  However, what can be gleaned from the cases and the ethics opinion on the subject

compels a finding that the activities of respondent in processing his accounts satisfy any "meaningful attorney involvement" standard, if one exists.

### B. Collection of time-barred debts.

In its verified application, the State Bar acknowledges that there is a split of authority among states as to the propriety of seeking to collect time-barred debts. (See verified application at page 16.) What appears to be clear, however, is that if the state does not preclude such actions from being filed, then the FDCPA does not consider their filing to be an unlawful activity. In those cases, there can be no section 6068(a) violation on that ground.

California law does not preclude collection of time-barred debts. Similar rules apply in other states. (See *Freyermuth v. Credit Bureau Services, Inc.* (8th Cir.2001) 248 F.3d 767, 771; *Shorty v. Capital One Bank,* (District of New Mexico 2000) 90 F.Supp.2d 1330, 1332; *Walker v. Cash Flow Consultants, Inc.* (District Court for N.D. of Illinois 2001) 200 F.R.D. 613, 616.) Statutes of limitation are procedural, not substantive rules. As stated in a concurring opinion by Justice Kennard in *Adams v. Paul* ((1995) 11 Cal.4th 583, 597),

> "...[A] cause of action is not extinguished or impaired by the mere passage of time, and the maintenance of the claim is not precluded simply by the running of the statutory period. [citation] The statute of limitations is an affirmative defense that is forfeited if not appropriately invoked by the defendant."

Given clear California law on the subject, collection of time-barred debts, at least in California, is not a violation of California law and therefore, not a violation of the FDCPA. Further, there is insufficient basis, on the record before this court, to make a finding as to whether the allegations of violations in other states constituted a violation of section 6068, subdivision (a). Therefore, on this ground, the State Bar had failed to meet its burden.

### C. The effect of a violation of the FDCPA

In addition to the alleged violations of the FDCPA's provisions on false or misleading representations contained in 15 U.S.C. section 1692e, respondent is alleged to have violated many other provisions of the FDCPA. It is alleged that respondent or his lawfirms did the following:

- harassed consumers,

- sought to collect amounts in excess of that allowed by the Act,
- sought to collect improper service charges,
- made improper disclosures, sent out letters with unsigned signature blocks,
- sent out letters to a person other than the debtor,
- contacted a represented party,
- falsely represented the amount of a debt,
- falsely represented that he was entitled to practice law in another state,
- violated state debt collection by violating the FDCPA;
- sent letters to consumers after notice that the recipient disputed the debt,
- falsely represented that a consumer committed a crime or other conduct to disgrace the consumer,
- made threats to a consumer,
- failed to give proper notice of the nature of the debt, and
- misrepresented the amount of a returned check.

For the sake of argument, if the court were to conclude that all of the acts alleged above occurred and were violations of the FDCPA; and that a "meaningful attorney involvement" standard exists, that respondent violated that standard, and that the violation constituted a violation of the FDCPA, the question remains: *What is the effect of such a violation?*

The FDCPA is a strict liability statute. (*Goins v. Brandon, supra* at 367 F.Supp.2d at 244.) The import of such a characterization cannot be overemphasized in this case. There is a great public utility in creating strict liability statutes in certain areas of law. Allowing liability without respect to fault meets many societal needs. Often, it is used to promote public safety (e.g., products liability laws.) Other times, it seeks to reduce the administrative costs associated with a full trial on culpability issues, thereby redirecting benefits to further the purpose of the statute (e.g., workers' compensation laws.) Frequently, as is the case with workers' compensation statutory schemes, the benefits that one receives when one is found to be entitled thereto, are less than if the person were allowed to pursue the matter in a full court proceeding. However, the speed at which the compensation arrives is deemed to be a valuable benefit.

-16-

As in these examples, statutes such as the FDCPA seeks to advance a societal benefit by many of its legal requirements. Further, it seeks to do so quickly, thereby correcting a violation without the need to litigate each and every claim. Put simply, a violation of the statute will result in the prompt imposition of the penalty, irrespective of the facts surrounding the violation.

Adding to the mix of factors that distinguish the FDCPA from other statutes is the standard of proof involved in section 1692e of the Act. There, in claims for false or misleading representations (frequent violations of which are alleged in the application), the standard of proof is not based on whether a "reasonable person" would find the statements false or misleading. Rather, violations of this section are based upon the "least sophisticated consumer" standard. (*Cloman v. Jackson, supra,* at 988 F.2d 1318; and the many cases cited therein.) The purpose of the standard is to expand the reach of the FDCPA to include a broader base of consumers – "the gullible as well as the shrewd", as the court in *Cloman* noted.[9] Specifically, the court noted as follows:

> "To serve the purposes of the consumer-protection laws, courts have attempted to articulate a standard for evaluating deceptiveness that does not rely on assumptions about the 'average' or 'normal' consumer. This effort is grounded, quite sensibly, in the assumption that consumers of below-average sophistication or intelligence are especially vulnerable to fraudulent schemes."

(Id. at 1319.)

Therefore, "deceptiveness," as the court goes on to say, may be found where certain language "overshadows" other language, even though not technically inconsistent, or where the format or typeface is not large enough to adequately emphasize information in a notice.

With this statutory construction as a backdrop, we must return to our initial question as to the effect of a violation of the FDCPA. Put directly, can the State Bar "bootstrap" a violation of a strict liability statute, often times with a reduced standard of care, to create a violation of section 6068, subdivision (a) or 6106. As set forth below, this court finds that the State Bar cannot do so.

---

[9] In the hearing of this matter, it was suggested that this standard may be based on a sixth-grade level of sophistication.

Our Supreme Court has addressed a similar issue in the context of attorney discipline. In *In re Fahey* (1973) 8 Cal.3d 842, the court faced a respondent that had been convicted of a failing to file his tax returns. He was charged with and convicted of a misdemeanor violation of 26 U.S.C. section 7203. That conviction was not based on and did not require a finding of intent to defraud. Rather, it was sufficient to find "bad purpose" inferred from his voluntary, deliberate failure to file the returns with knowledge that there was no reasonable justification for his not doing so. While the tax law was not technically a strict liability statute, it relied on a reduced level of intent, and in that way, was similar to the FDCPA.

In the disciplinary action that followed the criminal conviction, the Supreme Court recognized the nature of this statute, and refused to find moral turpitude arising out of its violation. While not condoning the attorney's conduct, in dismissing the action against the attorney, the Court was reluctant to read more into the tax statute, other than its violation. (Cf.; *In re Rohan* (1978) 21 Cal.3d 195, 203-204; see also, *In re Higbie* (1972) 6 Cal.3d 562 [violation of a law requiring payment of a marijuana transfer tax not moral turpitude].)

In the instant case, the State Bar asks this court to find that various violations of provisions of the "false or misleading representations" section of the FDCPA, as well as other sections of that Act, represent misconduct in California. Such an assertion requires this court to find that the proof required in the underlying violations equated to the proof necessary for a finding in this court. Given the strict liability nature of the Act, as well as the lower "least sophisticated consumer" standard, compared with the clear and convincing standard of this proceeding, the court is unable, on this record, to make such a finding. As such, the claimed violations set forth above do not support the relief requested under Business and Professions Code section 6007, subdivision (c)(2).

### D. Unauthorized practice of law.

At various points in the applications, the State Bar alleges that the actions of respondent, by corresponding with consumers in the various states, constituted the unauthorized practice of law, or, the cousins of this charge, holding oneself out as a licensed attorney or aiding and abetting the unauthorized practice of law. The letters sent to consumers varied substantially.

-18-

The State Bar contends that the letters constituted the unauthorized practice of law, due to the following characteristics:

- Using computer-generated letters sent by non-attorneys in mass mailings to out-of-state consumers;
- Identifying respondent's firm as a California professional law corporation on the letters with an address either in California or elsewhere and sent out-of-state;
- Failing to identify an attorney's name in the signature block, but rather, simply stating the name of the firm or sometimes, omitting the signature block altogether;
- Listing the cities (without addresses) in which respondent had "offices";
- Using "of counsel" attorneys in states other than California;
- Misrepresenting the size of his firm by virtue of the large number of offices; and
- Carrying out the mass mailing with no "meaningful attorney involvement", in that the actual mailing was performed by non-attorney support staff after review of computer parameters and other data by respondent.

The court has reviewed the letters involved in these matters. All refer to respondent or the lawfirms as either a California attorney or California professional corporation. While it is true that respondent listed the cities in which he had "offices" without listing the addresses or the names of the attorneys in each, this is a common practice among firms, particularly large firms with many offices and attorneys. Evidence was presented that showed that respondent had retained "of counsel" attorneys in the states to which he sent letters.

Further, in the context of unauthorized practice of law, it is unclear as to the impact of stating only the firm name or no name in the signature block.[10] While it is true that this prevents the recipient from knowing the name of the lawyer or non-lawyer employee that sent the letter, it is equally clear that this was a collection letter from a debt collector, not a communication of an attorney involved in litigation. If the recipient wanted to get in touch with the debt collector, the telephone number and address were clearly visible on the letterhead. (See also, *Kirstner v. Law Offices of Michael P. Margelefsky* (N.D. Ohio 2007) Slip Copy 2007 WL 120150, attached as Exhibit AA to respondent's request for judicial notice dated September 17, 2007.)

In order to prove a violation of rule 1-300(B), it is necessary to prove that the conduct would result in a violation of regulations of the profession in the relevant jurisdiction. The

---

[10]Section 6077.5 requires an attorney acting as a collection agency to "identify himself or herself, by whom he or she is employed, and his or her title or job capacity." However, this appears primarily to give the consumer notice of whom to call, not to prevent the unauthorized practice of law.

statutes presented in this case are criminal statutes, so, under our case law, the standard of proof is by the elevated criminal standard of "beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." (*In the Matter of Wells* (Review Dept. 2006) 4 Cal.State Bar Ct. Rptr 896, 903, footnote 11; Vapnek, et al., *California Practice Guide: Professional Responsibility*, The Rutter Group, section 1:235, et seq.)

On the evidence presented, this court cannot conclude that the alleged misconduct listed above is the unauthorized practice of law, or any of its variants. For example, there is no evidence that respondent gave advice to out-of-state consumers, appeared in an out-of-state court, or represented himself as a licensed attorney in a state other than California. Unlike the respondent in the *Wells* case, this respondent has not stipulated to practicing in the foreign jurisdiction. Further, a look at the activities performed by the attorney in *Wells* is revealing. She was physically located in South Carolina, and listed herself on her letterhead as "of counsel" to a South Carolina attorney. She offered advice to clients while practicing in South Carolina. She drafted letters arguing South Carolina law as a basis for liability.

In this case, respondent was collecting bills for clients. In doing so, he sent demand letters on a computer-generated letterhead. The data, as noted above, was reviewed by him and, after he made the decisions to send correspondence, it was mailed by his staff.

On this record, the State Bar has failed to meet its burden of proof by clear and convincing evidence, much less the required proof by beyond a reasonable doubt.

### E. Substantial threat of harm.

1. Exigency

Although not specifically stated in section 6007, subdivision (c), it is clear that the State Bar must prove exigency in order to obtain the extraordinary relief set forth in that section. It is similar, in the civil context, to a request for injunctive relief, where irreparable harm must be shown.

The section itself sets forth language that supports this conclusion. First, it is written in the present tense when it states that "In order to find that the attorney's conduct *poses* a substantial threat of harm...". This contemplates a current, imminent, pending danger. Clearly,

in order to prove that the attorney's conduct poses a substantial threat, we may look to past conduct as an indicator that the "threat" is a real one, not an isolated instance. But the essence of section 6007, subdivision (c) is that the matter cannot wait for a traditional disciplinary action; rather, it must be given immediate attention.

A corollary of this exigency requirement is that misconduct that is dated or otherwise stale cannot be used to justify this extraordinary relief. As such, we must look at the history of the cases used by the State Bar to support its assertion that respondent poses a substantial threat of harm to clients or the public. In the application at page 6, the State Bar lists the investigation matters and when they were opened.

| Case No. | Date Opened | Complaining Witness |
|----------|-------------|---------------------|
| 04-O-14977 | October 25, 2004 | Gina Kopp |
| 05-O-01799 | April 14, 2005 | Walter Arrington |
| 05-O-02165 | April 21, 2005 | State Bar Investigation |
| 05-O02799 | May 5, 2005 | Jovita Vega/Charles Cable |
| 05-O-02268 | May 12, 2005 | Charles A. Harter |
| 05-O-04033 | August 31, 2005 | Charles Cagle |
| 05-O-04704 | October 27, 2005 | Theresa P. Keller |
| 05-O-04826 | November 7, 2005 | Sarah Bohnenstiehl |
| 05-O-04918 | November 16, 2005 | Petrina Crockford |
| 05-O-05305 | December 22, 2005 | Michael Hanson |
| 06-O-11995 | April 26, 2006 | Paul Arons |
| 06-O-12320 | May 17, 2006 | Linda Decoverly-Wise |
| 06-O-12868 | June 16, 2006 | Joanne Faulkner |
| 06-O-12913 | June 19, 2006 | Marsha White |
| 06-O-12915 | June 19, 2006 | Robin Blitz |
| 06-O-13753 | August 16, 2006 | Scott and Vicky Forman |
| 06-O-13833 | August 22, 2006 | Jacqueline Tregre |
| 06-O-15158 | November 15, 2006 | State Bar Investigation |

As can be seen from the above table, the first case listed is from October 2004. In fact, the State

Bar had reviewed respondent's debt collection practices even earlier. On page 33 of the application, the State Bar recounts a warning letter issued in August 2004, after an investigation of unknown length. The State Bar states as follows:

> "On August 5, 2004, after receiving a complaint from consumer Peter Clark regarding Boyajian's debt collection activity in California, and after giving Boyajian a chance to respond to the complaint, the State Bar of California issued a warning letter in lieu of disciplinary action to Boyajian pursuant to rule 2601 of the Rules of Procedure of the State Bar of California. The State Bar stated, "Based upon the findings from our investigation, we conclude that there is substantial evidence that [Boyajian] violated section 6077.5 (g) of the Business and Professions Code by failing in his letter of June 30, 2004 or otherwise, to provide requisite evidence of the debt. The noted deficiencies are (1) no document other than that prepared by Respondent, when the check itself should be available; (2) no identification of the name of the bank on which the check was drawn, nor it's [*sic*] location; (3) no evidence of the mailing address for the account holder; and (4) no evidence that the correct Peter Clark has been contacted. It also appears to violate the federal debt collection law.'"

(Footnotes omitted.)

As such, the State Bar was aware of respondent's activities prior to August 5, 2004. Other California cases followed shortly thereafter. Case numbers 04-O-14977 (Kopp), opened October 25, 2004; 05-O-17977, (Arrington) opened April 14, 2005; 05-O-02799, (Vega/Cable) opened May 5, 2005 were all California investigations. On April 21, 2005, the State Bar opened a State Bar Investigation, which entailed matters arising out of Connecticut, Minnesota, New York, Colorado, Illinois, Pennsylvania, Washington, Ohio, New Jersey, Massachusetts, West Virginia, and Michigan.[11]

What is clear from the above, is that over two and one-half years passed from the initial discovery of respondent's alleged misconduct and the filing of the 06 TE. This delay has two results: First, it indicates that the State Bar has not acted promptly in bringing this request for extraordinary relief. This failure raises, in other courts, the issue of laches. Failure to timely file a request for injunctive relief is cause for denial of that relief, where the opposing party has been prejudiced by the delay. (6 Witkin, Cal. Proc. 4th "Provisional Remedies" section 343.)

Second, the delay reflects that the conduct is old and does not pose a present threat.

---

[11]Of course, the court cannot determine from the table or the application when the investigation added charges from each of these states.

Again, relying on the law of injunctions, "an injunction is no longer necessary when the defendant voluntarily discontinues the wrongful conduct." (Witkin, Id. at section 344.) As the court stated in *Mallon v. Long Beach* (1958) 164 Cal.App.2d 168, 190:

> "If, therefore, at the time of the order or judgment ... there is no reasonable probability that past acts complained of will recur, injunctive relief will be denied. Injunctive power is not used as punishment for past acts and is ordered against them only if there is evidence that they will probably recur."

The 07 TE case updated the O6 TE application, in response to the court's concern as to the freshness of the alleged misconduct in the O6 TE. The 07 TE was filed five months after the filing of the 06 TE. In that five-month period, the State Bar identified three additional incidents of misconduct:

- The Goins contempt;
- Failure to report a Montana judgment in May 2007; and
- Failure to cooperate in a State Bar investigation.[12]

The Goins contempt represented the culmination of matters originally occurring in 2006. The allegations in the 07 TE are that respondent failed to reply to an order to show cause, resulting in a finding of contempt and the award of sanctions.

The Montana judgment was entered May 15, 2007. The State Bar alleges that respondent had an obligation to report this judgment within 30 days, pursuant to section 6068, subdivision (o)(2).

In the five-month period after the filing of the 06 TE, the State Bar was only able to present two substantive charges of misconduct. Presumably, had there been other charges, the State Bar would have presented them as well.

The court finds that the State Bar has failed to satisfy its burden that the actions of respondent currently pose a substantial threat of harm to the interests of his clients or to the

---

[12]The court finds that this section 6068, subdivision (i) charge appears to be a *de minimus* violation. This charge alleges that respondent failed to respond to a letter of a State Bar employee on or before July 30, 2007 and had not so responded as of the filing of 07 TE on August 9, 2007. At this time, respondent was actively participating and litigating the 06 TE and, presumably, was in constant contact with the State Bar.

public, and further finds that the above misconduct alleged in the 07 TE is insufficient to change the court's view.

      2. The remaining allegations.

As set forth above, many of the allegations have been disposed of by the findings of this court. What remains is a disparate group of unrelated charges, covering a wide range of topics, including the following: a misleading website, the failure to pay certain judgments, the violation of certain court orders, failing to supervise subordinates, failing to report lawsuits or judgments in other states, failing to register as a debt collector in other states, giving misleading testimony during a deposition and lying under oath, using a recorded message with an automatic dialing device, failing to timely give a refund to a consumer, failing to provide a receipt, and violating state unfair trade laws. None of these allegations derives from a client complaint.

This court is aware that some of these allegations are serious in nature. If proven, they could result in discipline being imposed. However, these remaining charges show no pattern of misconduct. Since there is no pattern of behavior with the remaining charges, the burden of proof does not shift to the respondent, but remains with the State Bar. (Section 6007, subdivision (c)(2)(B).)

Given the proof presented, with respect to the remaining allegations, it is clear to this court that respondent would suffer greater injury from the imposition of the inactive enrollment, than his clients or the public would suffer from its denial. Further, on the remaining charges, there is no reasonable likelihood that the harm will continue. These remaining charges are more properly brought in a traditional original proceeding, since they do not pose a substantial threat of harm to clients or the public.

**F. Conclusion**

The State Bar has not met its burden as to each of the elements of section 6007, subdivision (c)(2). For the reasons set forth above, the applications for the involuntary inactive

enrollment of respondent Jack H. Boyajian are **DENIED** in their entirety, without prejudice to the State Bar bringing subsequent proceedings under rule 492 or further disciplinary proceedings.


Dated:  October 2, 2007

RICHARD A. HONN
Judge of the State Bar Court

# CERTIFICATE OF SERVICE
### [Rule 62(b), Rules Proc.; Code Civ. Proc., § 1013a(4)]

I am a Case Administrator of the State Bar Court of California. I am over the age of eighteen and not a party to the within proceeding. Pursuant to standard court practice, in the City and County of Los Angeles, on October 2, 2007, I deposited a true copy of the following document(s):

## DECISION DENYING INVOLUNTARY INACTIVE ENROLLMENT

in a sealed envelope for collection and mailing on that date as follows:

[X]    by first-class mail, with postage thereon fully prepaid, through the United States Postal Service at Los Angeles, California, addressed as follows:

> MARK E ELLIS ESQ
> JUNE D COLEMAN ATTORNEY AT LAW
> ELLIS COLEMAN ET AL LLP
> 555 UNIVERSITY AVE #200
> SACRAMENTO, CA   95825

[X]    by interoffice mail through a facility regularly maintained by the State Bar of California addressed as follows:

> Kimberly G. Anderson, Enforcement, Los Angeles

I hereby certify that the foregoing is true and correct. Executed in Los Angeles, California, on **October 2, 2007**.

*Julieta E. Gonzales*

Julieta E. Gonzales
Case Administrator
State Bar Court