1    Mark E. Ellis – 127159
      Jennifer S. Gregory – 228593
2    ELLIS, COLEMAN, POIRIER, LAVOIE,
       & STEINHEIMER LLP
3    555 University Avenue, Suite 200 East
      Sacramento, CA  95825
4    Tel: (916) 283-8820
      Fax: (916) 283-8821
5

6    Attorneys for Defendants ELITE RECOVERY SERVICES, INC., PRESIDIO FINANCIAL, LLC
      AND PAUL NIEDZIALOWSKI
7

8                     UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11    TONY CASTILLO,                      Case No.:  CV-08-2322

12         PLAINTIFF,                **DEFENDANTS ELITE RECOVERY
                                        SERVICES, INC., PRESIDIO FINANCIAL,
13    v.                                  LLC AND PAUL NIEDZIALOWSKI'S
                                        MEMORANDUM  OF POINTS AND
14    ELITE RECOVERY SERVICES, LLC,      AUTHORITIES IN SUPPORT OF MOTION
                                        TO DISMISS [FRCP 12(b)(6)]**
15         DEFENDANT.
                                        DATE:       July 24, 2008
16                                          TIME:       10:00 a.m.
                                         JUDGE:     Hon. Maria-Elena James
17

18

19

20

21

22

23

24

25

26

27

28

---

1

# TABLE OF CONTENTS

2

**PAGE**

3

I.    INTRODUCTION ............................................................................................................... 1

4

II.   THE COMPLAINT'S RELEVANT ALLEGATIONS ............................................... 1

III.  STANDARD ..................................................................................................................... 2

5

IV.   ARGUMENT ..................................................................................................................... 3

6

    A.    The Letter is Not Misleading or Unconscionable as a Matter of Law ........................ 3

7

        1.    Standard of Review ....................................................................................... 3

8

        2.    Purpose and Intent of the FDCPA Must be Considered In Determining
            Whether Defendants' Conduct Violates the Statute ...................................... 4

9

        3.    The Inclusion of a Lay Debt Collector's Title Within a Debt Collection

10

            Agency is Not a Deceptive Practice ............................................................. 5

11

    B.    The Proffered "Meaningful Involvement" Doctrine Asserted Here By Plaintiff as
        Against a Lay Collector Should be Rejected as a Matter of Law .......................... 7

12

        1.    Under the Plain Language of the Statute, there is no Requirement of
            "Meaningful Involvement" Under the FDCPA ....................................... 7

13

        2.    The Legislative History of the FDCPA Does Not Support the Application

14

            of the Meaningful Involvement Doctrine ..................................................... 9

        3.    Application of the "Meaningful Involvement" Doctrine Conflicts with

15

            Section 1692e(14)'s Requirement That Debt Collectors Communicate

16

            With Debtors in Their Own Name ............................................................. 10

17

        4.    The "Meaningful Involvement" Has Not Been Adopted by the
            United States Supreme Court, the California Supreme Court, or the

18

            Ninth U.S. Circuit Court of Appeals ......................................................... 11

19

        5.    The Imposition of a Meaningful Involvement Requirement on Lay Debt
            Collectors Would Create an Impermissible Burden on Lay Collectors in

20

            Contravention of the Express Purpose of the FDCPA. ...................................... 12

21

        6.    To the Extent that the Dubious "Meaningful Involvement" Doctrine is
            "Read" in to the FDCPA, it Should be Limited to Attorneys, and Not

22

            Expanded to Read Lay Collectors ............................................................. 13

V.    CONCLUSION ............................................................................................................. 14

23

24

25

26

27

28

# TABLE OF AUTHORITIES

PAGE

### Cases

*Abels v. JBC* (N.D. Cal. 2005) 428 F.Supp.2d 1023 ...................................................4, 6, 8

*Anthes v. Transworld Airline* (D. Del. 1991) 765 F.Supp. 162 .......................................4, 10

*Balistreri v. Pacifica Police Dep't* (9th Cir. 1988) 901 F.2d 696 ...........................................3

*Barron v. Reich* (9th Cir. 1994) 13 F.3d 1370 ......................................................................2

*Bleich v. Revenue Maximization Group, Inc. (E.D.N.Y. 2002)* 233 F.Supp.2d 496 ...........6, 12

*Bundren v. Superior Court* (1983) 145 Cal.App.3d 784 ..........................................................6

*Camacho v. Bridgeport Financial, Inc.* (9th Cir. 2005) 430 F.3d 1078 ...................................9

*Clark v. Capital Credit & Collection Services, Inc.* (9th Cir. 2006) 460 F.3d 1162 ...............12

*Clegg v. Cult Awareness Network* (9th Cir. 1994) 18 F.3d 752 ..............................................2

*Clomon v. Jackson* (2nd Cir. 1993) 988 F.2d 1314 .........................................4, 9, 11, 13, 14

*Danielson v. Hicks* (D. Minn. 1995) 1995 WL 767290 ...........................................................4

*Ducrest v. Alco Collections, Inc.* (M.D. La. 1996) 931 F.Supp. 459 .................................5, 12

*Emanuel v. American Credit Exch.* (2d Cir. 1989) 870 F.2d 805 .............................................5

*Forgey v. Parker Bush & Lane* (D.Or 2004) 2004 WL 1945737 ...........................................12

*Girard v. Ball* (1981) 125 Cal. App.3d 772 ..........................................................................6

*Heintz v. Jenkins* (1995) 514 U.S. 291 ......................................................................8, 9, 10

*Higgins v. Capital Credit Serv., Inc.* (D. Del. 1991) 762 F.Supp. 1128 ...................................6

*Hooper v. Capital Credit & Collection Services, Inc.* (D.Or. 2004) 2004 WL 825619 ...........12

*Howe v. Reader's Digest Ass'n, Inc.* (S.D.N.Y. 1988) 686 F.Supp. 461 ...............................12

*Hubbard v. National Bond & Collection Associates* (3d Cir. 1991) 126 B.R. 422 ...............12

*Jenkins v. Heintz* (7th Cir. 1997) 124 F.3d 824 .....................................................................8

*Lamie v. U.S. Trustee* (2004) 540 U.S. 526 ...........................................................................9

*Miller v. Wolpof & Abramson* (3d Cir. 2003) 321 F.3d 292.......................................8, 11, 13

*Mizrahi v. Network Recovery Services, Inc.* (E.D. N.Y. 1999) 1999 U.S. Dist LEXIS 22145 ...............4

*Morse v. Dunn & Bradstreet, Inc.* (D. Minn. 2000) 87 F.Supp.2d 901 ...................................4

*Palmer v. I.C. System* (N.D. Cal. 2005) 2005 WL 3001877 ................................................12

*Pressley v. Capital Credit & Collection Service, Inc.* (9th Cir. 1985) 760 F.2d 922 ...............4

*Renick v. Dun & Bradstreet Receivable Mgmt. Servs.* (9th Cir. 2002) 290 F.3d 1055...........3

*Ross v. Creel Printing & Publishing Co.* (2002) 100 Cal.App.4th 736...................................6

*Rumpler v. Phillips & Cohen Associates, Ltd.* (E.D.N.Y. 2002) 219 F. Supp.2d 251...........4, 5, 6, 9

*Terran v. Kaplan* (9th Cir. 1997) 109 F.3d 1432 ...........................................................1, 3, 4, 5, 6

*Van Camp Sea Food Co. v. Westgate Sea Products Co.* (9th Cir. 1928) 28 F.2d 957 ............................3

*Veillard v. Mednick* (N.D. Ill. 1998) 24 F.Supp.2d 426........................................................................4

*Wade v. Regional Credit Ass'n* (9th Cir. 1996) 87 F.3d 1098 ...............................2, 3, 4, 5, 10

*White v. Goodman* (7th Cir. 2000) 200 F.3d 1016..............................................................................10

*Womack v. National Action Financial Servs.* (E.D.Pa.) 2007 WL 2155669 ....................4, 7, 14

**Statutes**

15 U.S.C. § 1692e(14) ...........................................................................................................................11

15 U.S.C. § 1692g...................................................................................................................................13

## I.    **INTRODUCTION**

Pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6), Defendants Elite Recovery Services (hereinafter "Elite"), Presidio Financial, LLC, and Paul Niedzialowski (collectively, "Defendants") request this Court dismiss this matter in their favor and against Plaintiff Tory P. Castillo.  Plaintiff solely asserts a so-called "lack of meaningful involvement" claim.  Even setting aside the issue of whether Mr. Niedzialowski was "meaningfully involved" in handling Plaintiff's account, the facts as pled simply do not constitute a violation of the Fair Debt Collection Practices Act ("FDCPA").  The **"meaningful involvement" theory has not been adopted by the Ninth Circuit Court of Appeals at all, and its reach has never been extended, as here, beyond the context of attorneys to lay collectors.**  Finally, as a matter of law, a review of the letter on it its face demonstrates that it is **neither deceptive nor unconscionable in violation of the FDCPA – as a matter of law**.  (See Terran v. Kaplan (9th Cir. 1997) 109 F.3d 1432-33.)  Accordingly, as a matter of law, Plaintiff is not entitled to recover for such allegations, and these moving Defendants respectfully request this Court grant Defendants' motion to dismiss, without leave to amend.

## II.    **THE COMPLAINT'S RELEVANT ALLEGATIONS**

Plaintiff opened a credit account to purchase goods at Levitz Furniture Company.  (Complaint, ¶13.)  The account was owned by HSBC Retail Services ("HSBC").  (Id. at ¶14.)  Plaintiff failed to make timely payments on the account.  (Id. at ¶¶15-16.)  On or about September 14, 2006, HSBC sent Plaintiff correspondence requesting payment; payment was not made.  (Id. at ¶14.)

HSBC in turn sold Plaintiff's account to Defendant EMCC.  (Id. at ¶20.)  In turn, Defendant EMCC assigned the account to Presidio for collection.  (Id. at ¶22.)  Thereafter, Defendant Presidio undertook collection of the account by retaining Elite Recovery Services, Inc., a collection agency ("Elite").  (Id. at ¶24.)

Defendant Paul Niedzialowski is the President of Elite.  On or about March 6, 2008, Mr. Niedzialowski, Defendant Elite's letterhead, sent a collection letter to Plaintiff, which stated the following, in pertinent part:

> "Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing

-1-

1  |  within 30 days from receiving this notice that you dispute the validity of
2  |  this debt or any portion thereof, this office will obtain verification of the
   |  debt or obtain a copy of a judgment and mail you a copy of such
3  |  judgment or verification. If you request this office in writing within 30
   |  days after receiving this notice this office will provide you with the name
4  |  and address of the original creditor, if different from the current creditor.
   |  . . .
5  |  Sincerely,
   |  Paul Niedzialowski
   |  President
6  |  Elite Recovery Services, Inc.
   |  A Professional Debt Recovery Agency"

8  (*Id.* at ¶26-27.)

9  This letter is a standard 15 U.S.C. § 1692g "validation of debts" notice. (See *Wade v. Regional*

10  *Credit Ass'n* (9th Cir. 1996) 87 F.3d 1098, 1099.) Significantly, there is **no allegation in the**

11  **Complaint that the letter is inaccurate, deceptive, or unconscionable** except that the letter is sent

12  under the name of the President of this lay (non-law firm) collection agency.

13  Plaintiff alleges Mr. Niedzialowski was not "meaningfully involved" in the actual

14  collection of Plaintiff's debt, did not author or personally direct the sending of the letter to Plaintiff,

15  and he did not have any "meaningful involvement" in the decision to send the collection letter to

16  Plaintiff. (*Id.* at ¶¶28-30.) Plaintiff further alleges Mr. Niedzialowski's signature and apparent "high

17  status" in his company were designed to deceive the Plaintiff by "coercing payment." Despite these

18  allegations, **Plaintiff fails to state a cognizable FDCPA violation**.

19  ### III.    STANDARD

20  A motion to dismiss under FRCP Rule 12(b)(6) tests the legal sufficiency of the claims asserted

21  in a complaint and, thus, the scope of review on a motion to dismiss for failure to state a claim is

22  **limited to the contents of the complaint**. (*Clegg v. Cult Awareness Network* (9th Cir. 1994) 18 F.3d

23  752, 754.) When evaluating such a motion to dismiss, the Court must accept all material allegations in

24  the complaint as true and construe them in the light most favorable to the non-moving party. (*Barron*

25  *v. Reich* (9th Cir. 1994) 13 F.3d 1370, 1374.) The Court is not required, however, to accept

26  "conclusory legal allegations cast in the form of factual allegations if those conclusions cannot

27  reasonably be drawn from the facts alleged." (*Clegg, supra*, 18 F.3d at 754-55.) Dismissal under Rule

28  12(b)(6) is appropriate where the complaint lacks any cognizable legal theory or fails to state sufficient

-2-

facts to constitute a cognizable legal theory. (*Balistreri v. Pacifica Police Dep't* (9th Cir. 1988) 901 F.2d 696, 699.) "When it is clear that under no state of the evidence can plaintiff make a case of infringement, it would be idle to go further and a motion to dismiss should be granted." (*Van Camp Sea Food Co. v. Westgate Sea Products Co.* (9th Cir. 1928) 28 F.2d 957, 957-58.)

## IV.    ARGUMENT

Plaintiff's claim for violation of the FDCPA as against Defendants relies solely on the theory that Mr. Niedzialowski's letter reflecting his signature and "his" status as President of the company was a deceptive action designed to coerce payment from Plaintiff. (Complaint, ¶31.) There is no allegation or claim in the Complaint that Plaintiff was *actually* deceived, misled, damaged or injured in any way as a result of the inclusion of his signature, and his title in the company on the letter sent to Plaintiff, much less any other supposed violative conduct.

Plaintiff instead merely alleges that Mr. Niedzialowski was not "meaningfully involved" in the collection of Plaintiff's debt. But, even if true, these facts as pled simply cannot constitute a cognizable violation of the Fair Debt Collection Practices Act ("FDCPA"). The **"meaningful involvement" doctrine has never been adopted by the Ninth U.S. Circuit Court of Appeals**. Moreover, even in those jurisdictions where the "meaningful involvement" standard has been adopted, such as the Second U.S. Circuit Court of Appeals, <u>its reach has been limited to attorneys only</u>. Accordingly, as discussed herein, Plaintiff is not entitled to recover for such allegations.

**A.    <u>The Letter is Not Misleading or Unconscionable as a Matter of Law</u>.**

**1.    Standard of Review**

The Ninth U.S. Circuit Court of Appeals has repeatedly held that whether a written communication is deceptive, unconscionable, or otherwise violative of the FDCPA on its face is determined by the court in the first instance as a matter of law by comparing the language in the written demand to the prohibitions found within the FDCPA. (*Renick v. Dun & Bradstreet Receivable Mgmt. Servs.* (9th Cir. 2002) 290 F.3d 1055, 1057; *Wade v. Regional Credit Ass'n* (9th Cir. 1996) 87 F.3d 1098, 1099; *Terran, supra*, 109 F.3d at 1432-33.) Indeed, the Ninth Circuit has made perfectly clear that it will find no violation of the FDCPA where the statements and representations made in a written collection communication are objectively true. (See, e.g., *Wade, supra*, 87 F.3d at 1100.)

---

1    Here, there is no suggestion that the letter attached as Exhibit C to Plaintiff's Complaint is

2    deceptive, or unconscionable in any way other than because of the inclusion of the name of the

3    President of Elite as the ostensible signatory of the letter.  There is no demand for immediate payment,

4    nor is there any threat of litigation.  (See, e.g., *Terran, supra*, 109 F.3d at 1432-33.)  Plaintiff does not

5    allege that Mr. Niedzialowski is not the President or that the signature on the letter was neither signed

6    by or is an authorized facsimile thereof.

7    Under these circumstances, without more, this lawsuit not only is non-cognizable under the

8    FDCPA, it is borderline frivolous.  (See *Rumpler v. Phillips & Cohen Associates, Ltd.* (E.D.N.Y. 2002)

9    219 F. Supp.2d 251 (refusing to find inclusion of title of "Executive Vice President" on collection

10   letter deceptive); *Womack v. National Action Financial Servs.* (E.D.Pa.) 2007 WL 2155669, *5

11   (refusing to find inclusion of "Chief Executive Officer" on collection letter deceptive).[1])

### 2.    The Purpose and Intent of the FDCPA Must be Considered In Determining Whether Defendants' Conduct Violates the Statute.

14   In determining whether conduct by a debt collector violates the FDCPA, reference necessarily

15   must be made to the purpose and intent of the FDCPA's statutory scheme itself.  (See, e.g., *Pressley v.*

16   *Capital Credit & Collection Service, Inc.* (9th Cir. 1985) 760 F.2d 922, 924; *Morse v. Dunn &*

17   *Bradstreet, Inc.* (D. Minn. 2000) 87 F.Supp.2d 901, 903-04; compare *Wade, supra,* 87 F.3d at 1099.)

18   Where a collector's conduct "**in no way exemplifies the abusive behavior or false or misleading**

19   **practice** that Congress had in mind when it enacted the FDCPA," then **there is no violation**.  (*Morse*,

20   *supra*, 87 F.Supp.2d at 904.)  The FDCPA was enacted to stop abusive debt collection tactics, not

21   reward debtors for novel interpretations of debt collection letters.  (*Clomon v. Jackson* (2nd Cir. 1993)

22   988 F.2d 1314, 1320 (the least sophisticated consumer standard serves the dual purpose of "ensuring

23   protection of all consumers, even naïve and trusting, against deceptive debt collection practices, and

---

[1]  Compare *Abels v. JBC* (N.D. Cal. 2005) 428 F.Supp.2d 1023, 1028-29 (finding that mere inclusion of collection letter on attorney letterhead was neither deceptive or unconscionable regardless of whether attorney actually signed or was "involved" in sending the letter); *Veillard v. Mednick* (N.D. Ill. 1998) 24 F.Supp.2d 426, 430; *Anthes A Transworld Systems* (D. Del. 1991) 765 F.Supp. 162, 166-167 *Sturdevant v. Jolas* (W.D. Wis. 1996) 942 F.Supp. 426; *Mizrahi v. Network Recovery Services, Inc.* (E.D. N.Y. 1999) 1999 U.S. Dist LEXIS 22145 at *9-18; *Danielson v. Hicks* (D. Minn. 1995) 1995 WL 767290 at *3.

DEFENDANTS ELITE RECOVERY SERVICES, INC., PRESIDIO FINANCIAL, LLC AND PAUL
NIEDZIALOWSKI'S MEMORANDUM  OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

(2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices.")

Of course, **no such prohibited harassing or unconscionable conduct is asserted here against Elite or Mr. Niedzialowski**. Instead, Plaintiff merely asserts that Defendants violated the FDCPA by representing that the collection letter is from the President of Elite. (Complaint, ¶ 42.) Plaintiff's allegation that violations occurred here, under these circumstances, is simply unwarranted. The FDCPA was enacted as a "shield," not a "sword." (<u>See</u> *Emanuel v. American Credit Exch.* (2d Cir. 1989) 870 F.2d 805, 808.)   As stated in *Ducrest v. Alco Collections, Inc.* (M.D. La. 1996) 931 F.Supp. 459, the primary inquiry and touchstone for liability is whether the debt collector has acted unscrupulously in its conduct. (*Id.* at 462.)   There is <u>nothing</u> alleged in the Complaint that is remotely "unscrupulous" about Mr. Niedzialowski's conduct at issue here.   As such, **Plaintiff's claim for violation of the FDCPA fails in its entirety**.

> **3.     The Inclusion of a Lay Debt Collector's Title Within a Debt Collection Agency is Not a Deceptive Practice.**

In *Rumpler v. Phillips & Cohen Associates, Ltd.*, *supra*, 219 F. Supp.2d at 257, the court was faced with a collection notice on law firm letterhead and signed by "Adam S. Cohen, Esq., Executive Vice President." Even though the notice was on law firm letterhead and was signed by an attorney, the court nevertheless held that **the least sophisticated consumer would <u>not</u> be deceived by the notice into giving it more importance**. (*Id.* at 257.)   The court found that the use of the title "Executive Vice President" was neither deceptive nor unconscionable because it was true. (*Id.*)

The facts of this case are very similar. Mr. Niedzialowski included his title of "President," but did not include any designation of attorney status. Consequently, including Mr. Niedzialowski's designation as "President" of Elite – without more, cannot be deceiving. This is objectively true. Plaintiff cannot state a claim against Defendants for this purported violation of the FDCPA.

Under the law of this Circuit, whether an initial written collection communication violates the FDCPA depends on whether it is "likely to deceive or mislead a hypothetical 'least sophisticated debtor.' " (*Wade, supra,* 87 F.3d at 1100; <u>see also</u> *Terran, supra,* 109 F.3d at 1431.) In addition, whether a collection letter violates the FDCPA is a question of law that the court reviews *de novo*.

-5-

1   (*Terran, supra*, 109 F.3d at 1432.)  Notwithstanding the requirement under Rule 12(b)(6) to accept

2   Plaintiff's factual allegations as true, this Court is not bound by Plaintiff's interpretation of the letter,

3   and may make its own conclusions *de novo* as a matter of law regarding whether the letter meets the

4   FDCPA's requirements.  (*Id.* – holding that whether the language in a collection letter is misleading or

5   confusing to a least sophisticated debtor does not turn on the credibility of extrinsic evidence, but may

6   be determined on its face, and that the court's role is examining whether the letter comports with the

7   terms of the FDCPA is made as a matter of law.)  The Court must therefore objectively determine

8   whether Mr. Niedzialowski's letter could be interpreted by the least sophisticated consumer as

9   deceptive.

10       What is more, it is well-settled that a pre-litigation collection demand letter from a debt

11   collector, which accurately states the name of the collecting agency or law office, as required by 15

12   U.S.C. § 1692e(14), without more, does ***not*** violate the FDCPA.  (See, e.g., *Abels, supra*, 428

13   F.Supp.2d 1023, 1028-29 (citing cases).)  The fact that the communication is from someone with

14   "more authority" than a no-name collector cannot constitute, by itself, "deception" under the FDCPA.

15   (See *Rumpler, supra*, 219 F.Supp.2d at 257 (use of the title "Executive Vice President" does not

16   constitute a deceptive practice).)

17       The case law is clear that any purported increase in economic pressure associated with

18   communications from a collection agency are not actionable under the FDCPA.  (See *Bleich v.*

19   *Revenue Maximization Group, Inc. (E.D.N.Y. 2002)* 233 F.Supp.2d 496, 500-01; *Abels, supra*, 428

20   F.Supp.2d at 1028.)  For example, the court in *Higgins v. Capital Credit Serv., Inc.* (D. Del. 1991)

21   762 F.Supp. 1128, 1135, explained that the FDCPA "was not intended to shield even unsophisticated

22   consumers from the embarrassment and inconvenience which are the natural consequences of debt

23   collection." (*Id.* at 1135.)  And, in debt collection cases, courts have recognized that the very nature of

24   collection efforts naturally cause some embarrassment and annoyance.  (*Ross v. Creel Printing &*

25   *Publishing Co.* (2002) 100 Cal.App.4th 736, 745-48 (**the very nature of debt collection often causes**

26   **emotional distress**); *Bundren v. Superior Court* (1983) 145 Cal.App.3d 784, 789 (same); *Girard v.*

27   *Ball* (1981) 125 Cal. App.3d 772, 787 (same).)

28   / / / /

-6-

1    <u>On its very face</u>, Mr. Niedzialowski's letter to Plaintiff comports with the notice requirements

2    of the FDCPA.  The letter is not deceptive, false, or misleading, as a matter of law, when viewed

3    through the eyes of the "least sophisticated consumer."  As shown below, the Plaintiff really

4    attempting to apply a standard which applies to attorney debt collectors, not lay collectors.  (<u>See</u>

5    <i>Womack, supra,</i> WL 2155669 at *5.)  In addition, using the name of a non-attorney employee of the

6    debt collector – even if the President of the company – cannot be considered deceptive, false, or

7    misleading.  Plaintiff's claim against these moving Defendants must be dismissed without leave to

8    amend.

9    **B.    The Proferred "Meaningful Involvement" Doctrine Asserted Here By Plaintiff as Against**
10   **a Lay Collector Should be Rejected as a Matter of Law.**

11        **1.    Under the Plain Language of the Statute, there is No Requirement of "Meaningful**
         **Involvement" Under the FDCPA.**

12

13        The sections of the FDCPA upon which Plaintiff references in her Complaint are 15 U.S.C. §

14   1692e, 1692e(10), 1692e(9), 1692f.  Section 1692e specifically prohibits a debt collector from using

15   "any false, deceptive, or misleading representation or means in connection with the collection of any

16   debt."  Section 1692e(9) prohibits "The use or distribution of any written communication which

17   simulates or is falsely represented to be a document authorized, issued, or approved by any court,

18   official, or agency of the United States or any State, or which creates a false impression as to its

19   source, authorization, or approval."  Section 1692e(10) prohibits "The use of any false representation

20   or deceptive means to collect or attempt to collect any debt or to obtain information concerning a

21   consumer."  Finally, section 1692f prohibits a debt collector from using "unfair or unconscionable

22   means to collect or attempt to collect any debt."

23        Plaintiff asserts that all of the above sections of the FDCPA are violated by the letter in

24   question because the letter implies that Mr. Niedzialowski was "meaningfully involved" in the

25   collection efforts here – when thin fact this is not true.  The concept of "meaningful attorney

26   involvement" is one created by case law, not by the FDCPA.  In fact, a reading of the FDCPA

27   indicates no mention of the terms "meaningful" or "involvement."  The doctrine has appeared in a few

28   federal cases, both at the trial level and on appeal.  Typically, the issue arises when a letter is sent by a

-7-

1    law firm to a consumer in a mass mailing, where it is alleged that the attorney did not directly control

2    or supervise the process through which the letter was sent. (*Miller v. Wolpolf & Abramson* (3d Cir.

3    2003) 321 F.3d 292.)    Usually, the court is interpreting 15 U.S.C. § 1692e(3), involving false or

4    misleading representations made by debt collectors.  That section reads, in its entirety, as follows:

5

6

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

7

8

> …
> (3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

9      This section above, involves false, deceptive, or misleading representations that the sender of

10   the letter is an attorney or that the communication is from an attorney.  In most of the cases that discuss

11   this matter, there is no real dispute that the debt collector is also an attorney, at least in the literal sense.

12   Rather, the issue arises as to whether the mass-mailed correspondence involved is *from* an attorney.

13   That is, where minimal overview occurs by the attorney listed on the letterhead, some courts have

14   questioned whether the letter is really *from* an attorney at all.

15      Other courts specifically note that no distinction should be drawn between lawyer and non-

16   lawyer debt collectors, and therefore, there is no separate "meaningful attorney involvement" standard.

17   This rule appears to have been adopted by the Court of Appeals for the Seventh Circuit. (*Jenkins v.*

18   *Heintz* (7th Cir. 1997) 124 F.3d 824.)  Although not precisely on the issue presented here, the U.S.

19   Supreme Court has also found that the FDCPA does apply to lawyers acting as debt collectors. (*Heintz*

20   *v. Jenkins* (1995) 514 U.S. 291.)  The ruling of this court, while not determinative of the issue, is at

21   least consistent with the position that the Seventh Circuit Court of Appeals took in *Jenkins v. Heintz*:

22   that there are not separate rules for lawyer and non-lawyer debt collectors.  As noted, other than a

23   district court decision from the Eastern District of California, there has been no clear resolution in

24   California as to the applicability of the "meaningful involvement" standard in this state.

25      Notably, the specific sections Plaintiff references impose no minimum level of "involvement"

26   whatsoever by debt collectors in collecting debts.  If a communication that says it is from someone

27   identified as the President of a debt collection agency is, as here, from a collection agency of which he

28   is the President, there is no misrepresentation. (Accord *Abels, supra,* 428 F.Supp.2d at 1028-29 (mere

-8-

1   fact that collection letter to debtor is on law firm letterhead is not a deceptive practice under the

2   FDCPA if letter is, in fact, from a law firm); *Rumpler*, *supra*, 219 F.Supp.2d at 257.)

3       The "meaningful involvement" doctrine assumes prohibitions that simply nowhere exist within

4   the plain text of the FDCPA.  The general rules of statutory interpretation prohibit courts from reading

5   requirements into a statute that simply are not there.  Courts have no authority to judicially "amend" a

6   statute.  (*Heintz, supra*, 514 U.S. at 297-298.)  Where statutory language is clear, the plain text

7   controls.  (*Id.*)  Courts may not disregard plain statutory language in order insert language into a statute

8   so that it has what they may consider a more reasonable meaning.  (*Camacho v. Bridgeport Financial,*

9   *Inc.* (9th Cir. 2005) 430 F.3d 1078, 1082.)  Moreover, the Court can only insert language into a statute

10  if the result of the statute's plain meaning is "absurd." (*Id.*; see also *Lamie v. U.S. Trustee* (2004) 540

11  U.S. 526, 537-538.)  Because the FDCPA's statutory scheme here is clear, the Court is not at liberty to

12  insert any additional language or requirements.  (*Camacho*, *supra*, 430 F.3d 1078, 1082.)

13      In sum, in none of the sections relied upon by Plaintiff, nor indeed any other section of the

14  FDCPA, can one find the phrase "meaningful involvement."  This is because there is simply **no**

15  **meaningful involvement requirement to be found in the FDPCA** and, as discussed below, there is

16  no basis for reading such a requirement into the statute.  However, for a court to create the

17  unprecedented judicial requirement that lay debt collectors must conduct some level of review of the

18  file before sending a collection letter, the Court would effectively be reading a requirement of the

19  FDCPA that does not otherwise exist.  This, it is not allowed to do.  (See *Camacho*, *supra*, 430 F.3d

20  1078, 1082.)

21      **2.    The Legislative History of the FDCPA Does Not Support the Application of the**
        **Meaningful Involvement Doctrine.**
22

23      Historically, the doctrine of "meaningful involvement" as applied to attorney debt collectors

24  has found its genesis in § 1692e(3) of the FDCPA.  (See, e.g., *Clomon*, *supra*, 988 F.2d at 1320.)  It is

25  significant to understand that section 1692e(3) was part of the original enactment of the FDCPA in

26  1977.  In 1977, attorneys were expressly exempted from the definition of a debt collector under 15

27  U.S.C. § 1692a(6) and, hence, were beyond the reach of the FDCPA.  In short, when this provision

28  was adopted, it was not intended to apply to attorneys at all.  In 1986, the attorney exception to the

1  definition of a debt collector was removed from the statute, but § 1692e(3) was not redrafted or

2  revised.

3      The intent behind § 1692e(3)'s prohibition was to prevent a lay collector from *pretending to be*

4  *an attorney* or to be claim he or she was communicating on behalf of an *attorney*, when he or she was

5  not in fact *an attorney*.  The 1986 amendment, removing the attorney exception, did not *ex post facto*

6  change the purpose or intent of Section 1692e(3).  In short, it is difficult to imagine a scenario in which

7  an attorney can ever violate Section 1692e(3).  Likewise, it is impossible to see how a lay collector

8  who fails to pretend to be an attorney can violate that section.

9      The plain language of this section requires nothing more than a letter that purports to be from

10  an *attorney* or the law firm actually be from an *attorney* or law firm.  Here, Mr. Niedzialowski is a lay

11  debt collector who happens to be President of the company collecting the debt.  Mr. Niedzialowski's

12  letter accurately reflecting his title with the debt collection agency is simply not deceptive it does not

13  expressly or impliedly represent that it is from an attorney.  (*Anthes v. Transworld Airline* (D. Del.

14  1991) 765 F.Supp. 162, 166-167.)

15      **3.**    **Application of the "Meaningful Involvement" Doctrine Conflicts with Section**

16          **1692e(14)'s Requirement That Debt Collectors Communicate With Debtors in**

17          **Their Own Name.**

18  The FDCPA prohibits debt collectors from using "any business, company or organization

19  name, other than the **true name** of the debt collector.  (15 U.S.C. § 1692e(14).)   This is significant

20  because the FDCPA does not make any distinction between "types" of debt collectors – whether they

21  are no-name lay collectors, executive management, or attorney collectors.  (See, e.g., *Heintz*, *supra*,

22  514 U.S. at 294.)

23      The FDCPA clearly and expressly requires a debt collector – whether a traditional collection

24  agency, a member of executive management, or lawyer – **to collect under its own actual name**.  (15

25  U.S.C. 1692e(14).)   Consequently, it is difficult to see how there could be a claim of falsity or

26  deception when the letter accurately identifies the "debt collector" who actually sends the letter.  (See

27  *White v. Goodman* (7th Cir. 2000) 200 F.3d 1016, 1020.)  Courts have held that a statement that is

28  actually, objectively true cannot support a claim under §1692e.  (See, e.g., *Wade*, *supra,* 87 F.3d at

-10-

1100.)  As admitted by Plaintiff, Mr. Niedzialowski is, in fact, the President of Elite.  (Complaint,
¶32.)  To state that any correspondence sent by Mr. Niedzialowski that *accurately identifies himself
and his title* is a violation of the FDCPA would contravene its clear intent to prevent deceptive
practices.

**4.    The "Meaningful Involvement" Has Not Been Adopted by the United States Supreme Court, the California Supreme Court, or the Ninth U.S. Circuit Court of Appeals**

As noted above, while some courts, primarily those sitting in the United States Second Circuit,
have read a higher standard (sometimes termed the "meaningful involvement" standard or doctrine)
into the FDCPA, to date that standard appears applicable only to attorney debt collectors. (*Clomon*,
*supra*, 988 F.2d at 1314; *Miller v. Wolpof & Abramson*, *supra*, 321 F.3d at 292.)   But **the
requirement of "meaningful involvement" – by lay or attorney debt collectors – has not been
adopted by the United States Supreme Court, the California Supreme Court, or the Ninth
Circuit Court of Appeals**.

Recently, the State Bar Court rejected the California State Bar's assertion that an attorney debt
collector must be meaningfully involved in the collection of debts.  (*In the Matter of Jack H. Boyajian,
et al.*, Case No. 06-TE-15159-RAH, 07-TE-13054 Case No. 06-TE-15159-RAH, 07-TE-13054 (State
Bar Court Of California, October 2, 2007) (Ex. 1 to the Ellis Decl.)  The State Bar Court held that:

> [I]t does not appear that California has clearly embraced the "meaningful
> attorney involvement" standard.  Further, there is persuasive reasoning,
> as represented by the ethics opinion cited above, that compels a finding
> that, in fact, **no such standard exists in California**.  Further, since the
> U.S. Supreme Court has not ruled specifically on this issue, there appears
> to be no clear rule binding all states as to the meaning, or even the
> existence, of a "meaningful attorney involvement" standard.

(*Id.* at pp. 13-14 (reversed in part by Review Department, while maintaining ruling as to meaningful
involvement) (emphasis added).)

There is no "meaningful involvement" standard in California or the Ninth Circuit, and
Plaintiff's claims premised on this doctrine should be rejected.

/ / / /

/ / / /

**5.    The Imposition of a Meaningful Involvement Requirement on Lay Debt Collectors Would Create an Impermissible Burden on Lay Collectors in Contravention of the Express Purpose of the FDCPA.**

A lay debt collector who simply collects on the debt as outlined by its client (the creditor of the debt) undertakes <u>no responsibility</u> to independently vouch for, or guarantee, the correctness, or validity, of the debt assigned.  (See, e.g., *Hubbard v. National Bond & Collection Associates* (3d Cir. 1991) 126 B.R. 422, 427-28 (D.Del.), *aff'd without opinion*, 947 F.2d 935 (court rejected proposition that a debt collector must independently investigate the background of the debt <u>prior</u> to communicating with, or collecting against, the debtor as "contrary to the intent of Congress and the purpose behind § 1692g of the FDCPA."); *Hooper v. Capital Credit & Collection Services, Inc.* (D.Or. 2004) 2004 WL 825619, *5 ("A debt collector is not ordinarily required to independently investigate an alleged debt, but instead is generally entitled to rely on the creditor's representation that the debt is valid."); *Howe v. Reader's Digest Ass'n, Inc.* (S.D.N.Y. 1988) 686 F.Supp. 461, 467 (same); *Forgey v. Parker Bush & Lane* (D.Or 2004) 2004 WL 1945737 (same).)  In short, **there is no requirement in the FDCPA that a debt collector conduct any review, "meaningful" or otherwise, before sending a letter to the debtor**.  The debt collector may wholly rely upon the information provided by its client unless it has notice of some reason why this information is inaccurate.  (See *Clark v. Capital Credit & Collection Services, Inc.* (9th Cir. 2006) 460 F.3d 1162, 1174; accord *Palmer v. I.C. System* (N.D. Cal. 2005) 2005 WL 3001877, *7.)

Moreover, there is no requirement that a debt collector ensure that a debt is due, valid or accurate before attempting to collect the debt.  Indeed, this is the entire purpose of having the dispute mechanism in 15 U.S.C. § 1692g.  (See 15 U.S.C. § 1692g; *Bleich, supra,* 233 F.Supp.2d at 500-01 (debt collectors not liable for an FDCPA violation for wrong amount demanded in its initial collection letter, since the very purpose of the FDCPA is to provide a mechanism for disputing and correcting an erroneously asserted debt).  Thus, a debt collector can rely on the representations of the creditor as to the amount of the debt.  (*Ducrest, supra,* 931 F.Supp. at 462.)  And a debt collector possesses no duty under the FDCPA to independently investigate, or verify, the amount of the debt or the basis for the debt. (*Ibid.*)

6. **To the Extent that the Dubious "Meaningful Involvement" Doctrine is "Read" in to the FDCPA, it Should be Limited to Attorneys, and Not Expanded to Read Lay Collectors.**

The "meaningful involvement" doctrine, whatever its pedigree, arose out of circumstances far different than those presented here. (See, e.g., *Miller, supra*, 321 F.3d at 292; *Clomon, supra*, 988 F.2d 1314, 1321.) In its original form, it has always been applied **only as to attorney** debt collectors, under the rationale that debt collection agencies should be prevented from essentially buying an attorney's name or letterhead for use in its collection attempts, when the attorney was never involved and never going to be involved in the collection of the debt. The rationale behind the doctrine was that the use of an attorney name or letterhead gave more weight to the communication than it otherwise deserved and thus was a misleading or deceptive practice. (*Ibid.*)

For example, in *Clomon*, a debt collection agency, NCB, sent collection letters to debtors on defendant Jackson's letterhead with purported facsimile signature of Jackson. While Jackson allegedly approved the form of the letters and approved the procedures by which the letters were sent, Jackson did not: (1) have any personal involvement in the mailing of letters to any debtor, (2) review any debtor's file, never reviewed or signed any letters, (3) give advice to the creditor about the debtor's case, (4) instruct to take any litigation steps against Clomon or any debtors. (*Clomon, supra*, 988 F.2d at 1317.) Under these circumstances, the court found the debt collection agency was simply "borrowing" the name and letterhead of an unrelated attorney in an effort to add weight or importance to its letters by implying that an attorney was involved and litigation may follow when the attorney was not involved at all and was not going to be involved.

Perhaps more significantly, the letters sent under Jackson's letterhead included (1) false threats of litigation, such as "You have 30 days before we take any additional steps deemed appropriate regarding your outstanding balance;" (2) "I am suggesting we take the appropriate measures provided under the law to further implement the collection of your seriously past due account;" (3) "Your account was referred to us with instructions to pursue this matter to the furthest extent we deem appropriate;" and (4) "Because of your failure to make any effort to pay your lawful debt … we may find it necessary to recommend to your creditor that appropriate action be taken to satisfy the debt"

-13-

1  among other similar statements which implied further action by the attorney or deeper involvement in

2  the collection effort. (*Id.* at 1317.) But attorney Jackson never filed any collection lawsuits and was

3  never really involved at all in the collection of the debts. (*Id.*) Aside from initially approving the form

4  letters used, Jackson was not a part of the collection process. (*Id.*)

5        In contrast to these "standard" meaningful involvement cases, it is clear that Mr. Niedzialowski

6  operates the only collection agency at issue – "Elite Recovery Services, Inc." He is in fact the

7  President. The concept of "meaningful involvement" – whatever its merit – as applied to attorneys is

8  wholly foreign and non-persuasive in the circumstances presented here. The primary concern

9  underlying most of the "meaningful involvement" cases is the concern that a debtor will be misled into

10  believing an <u>attorney</u> is involved and thus the "stakes have gone up" because there is a chance they

11  will be <u>sued</u>, when in fact no <u>attorney</u> will ever review the case or even consider litigation. This

12  concern is not present here. **Mr. Niedzialowski is only alleged to be a debt collector.** Accordingly,

13  there cannot be any deception or misrepresentation via Mr. Niedzialowski's accurate identification of

14  himself as President of Elite. Plaintiff has failed to state a claim for a violation of the FDCPA against

15  Defendants. **This Court cannot extend the "meaningful involvement" doctrine to non-attorneys**

16  merely because Plaintiff purports to claim it under a different section of the Act. (*Womack, supra,* WL

17  2155669 at *5.)

18  ## V.  <u>CONCLUSION</u>

19        For the reasons stated above, Defendants request this Court grant their motion to dismiss in its

20  entirety without leave to amend. Plaintiff has failed to allege facts sufficient to allege any claim of the

21  FDCPA. Moreover, no such facts exist, and **Plaintiff's claims against Defendants for violations of**

22  **the FDCPA should be dismissed <u>without leave to amend</u>**.

23  Dated: June 17, 2008

ELLIS, COLEMAN, POIRIER, LAVOIE, &
STEINHEIMER LLP

24

25

26  By   /s/ Mark E. Ellis
    Mark E. Ellis

27      Attorney for Defendants
    ELITE RECOVERY SERVICES, INC., PRESIDIO

28      FINANCIAL, LLC AND PAUL NIEDZIALOIOSKI

-14-